IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

BESSIE MILLER,

    Plaintiff,

    v.      CIVIL NO.: WDQ-10-2038

BALTIMORE CITY BOARD OF SCHOOL
COMMISSIONERS, *et al.*,

    Defendants.

## MEMORANUDM OPINION

Bessie Miller sued the Baltimore City Board of School Commissioners ("the Board"), Kevin Seawright, and Jerome Jones (collectively "the Defendants") under 42 U.S.C. § 1983 for violating her due process rights. For the following reasons, the Defendants' motions to dismiss will be denied.

I.    Background[1]

Beginning in 1997, Miller was employed by the Baltimore City Public School System. Compl. ¶¶ 2, 8. Most recently, she worked as a cafeteria manager at Frederick Douglass High School. *Id.* ¶ 8. Seawright was the special assistant to the Board's

---

[1] For the motions to dismiss, the well-pled allegations in Miller's complaint are accepted as true. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

chief operating officer, and Jones was a labor relations associate for the Board. *Id.* ¶¶ 5-6.

On February 13, 2009, at the direction of her regional supervisor, Bertha Simon, Miller attended a meeting with Seawright, other Board officials, and a union representative. *Id.* ¶¶ 9-10. Tony Geraci, Frederick Douglass High School's food and nutrition director, was also present. *Id.* ¶ 10. At the meeting, Seawright explained that the Board suspected Miller and "a subordinate who worked under her supervision" of misappropriating cafeteria funds. *Id.* Seawright "invited [Miller] to resign." *Id.* She denied the allegations and refused to resign. *Id.* Seawright said that the Board would proceed with an investigation and that Miller would be advised of its proposed action. *Id.* Before the meeting, Miller was not told "the subject matter to be discussed." *Id.*

On February 18, 2009, Miller received a letter from Geraci explaining that the Board had suspended her without pay, and that a "pre-termination hearing [was] . . . scheduled for . . . Thursday, February 26, 2009." *Id.* ¶ 13. In late February 2009, Miller and her union representative, Dorothy Bryant, met with the Board. *Id.* ¶ 14. Jones, who presided over the meeting, "said that there was and would be no investigation" of the allegations against Miller, and that "[n]o [Board] official [had] reached any determination" about her conduct or

employment. *Id.* After the meeting, Miller remained on unpaid suspension. *See id.*

On March 2, 2009, Bryant told Miller that "there had been developments in her case requiring . . . another meeting," which would be held the next day. *Id.* ¶ 15. On March 3, 2009, Miller attended a meeting with the Board and learned that the other employee suspected of misappropriation had resigned. *Id.* During the meeting, "Jones indicated on two occasions that he knew for certain that [Miller] was not involved in any theft of funds." *Id.* He told Miller that he suspected she had only "deviated from certain unspecified procedures in handling the funds and, as a result, the school system would not consider terminating her if she would accept a demotion to the position of Food Service Worker I." *Id.* The demotion would have reduced Miller's pay and hours. *Id.*

The Board gave Miller until March 9, 2009 to decide whether to accept the demotion, "subject to the understanding that any acceptance of the offer would include a waiver of any right by [Miller] to challenge legally the . . . Board's assertion of wrongdoing by her." *Id.* Miller did not accept the demotion, and she remained on indefinite unpaid suspension. *Id.* ¶¶ 16-19. She was eventually forced to retire, and no further hearing was held. *Id.* ¶¶ 19-21. Miller was not given an opportunity "to clear her name and reputation of [the] unfounded charges," and

3

the terms of her employment provided that the Board could not terminate her "absent a hearing . . . to establish the factual basis" for the decision. *Id.* ¶¶ 17-22.

On July 27, 2010, Miller sued the Defendants for violating her due process rights. ECF No. 1. On December 10, 2010, the Board and Jones moved to dismiss under Rule 12(b)(6). ECF No. 5. On December 13, 2010, Seawright moved to dismiss under Rules 12(b)(5) and 12(b)(6). ECF No. 6.

II. Analysis

    A. Standards of Review

        1. Rule 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Midgal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761,

764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009)(quoting *Twombly,* 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 1950. "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

2. Rule 12 (b) (5)

Under Fed. R. Civ. P. 12 (b) (5), a defendant may move to dismiss for insufficient service of process. If service is contested, the "plaintiff bears the burden of establishing [its] validity . . . pursuant to Rule 4."[2] *O'Meara v. Waters,* 464 F.

---

[2] Under Rule 4, an "individual within a judicial district of the United States" may be served by: (1) "delivering a copy of the summons and of the complaint to the individual personally;" (2) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or" (3) "delivering a copy of each to an agent

5

Supp. 2d 474, 476 (D. Md. 2006). An individual may also be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district is located or where service is made." Fed. R. Civ. P. 4(e)(1).[3]

"Generally, when service of process gives the defendant actual notice of the pending action, the courts may construe Rule 4 liberally." *O'Meara*, 464 F. Supp. 2d at 476. But, the "plain requirements for the means of effecting service may not be ignored." *Id.* Although insufficient service of process does not necessarily warrant dismissal, the court may dismiss the complaint for failure to comply with Rule 4 or quash the

---

authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2).

[3] Maryland law provides:

> Service of process may be made within this State . . . (1) by delivering to the person to be served a copy of the summons, complaint, and all other papers filed with it; (2) if the person to be served is an individual, by leaving a copy of the summons, complaint, and all other papers filed with it at the individual's dwelling house or usual place of abode with a resident of suitable age and discretion; or (3) by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: 'Restricted Delivery---show to whom, date, address of delivery.' Service by certified mail under this Rule is complete upon delivery.

Md. Rule 2-121(a).

6

service, thereby permitting the plaintiff to attempt to properly serve the defendant. *See Vorhees v. Fischer & Krecke,* 697 F.2d 574, 575-76 (4th Cir. 1983).

B. Motions to Dismiss for Failure to State Claim

The complaint alleges that the Defendants violated Miller's Fourteenth Amendment procedural due process rights by suspending her without pay "indefinitely pending termination" without a "meaningful opportunity to be heard." Compl. ¶¶ 24. The Defendants argue that the complaint must be dismissed because it does not show that Miller had a property interest in her job, and if she had, she has received due process and "opted to retire before the Board made a decision to terminate her." ECF No. 5 at 4-6; ECF No. 6 at 4-7.

To state a Fourteenth Amendment procedural due process claim, Miller must show that: (1) she had a protected property or liberty interest, (2) she was deprived of that interest by state action, and (3) the deprivation occurred without constitutionally adequate procedures. *See Sunrise Corp. v. City of Myrtle Beach,* 420 F.3d 322, 328 (4th Cir. 2005). The court's inquiry begins with "whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty,'" and looks "to see if the State's procedures comport with due process" only "after finding the deprivation of [such] a protected interest."

*American Mfs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) (citation omitted).

1. Miller's Protected Property Interest

A government employee "has a protected property interest in continued public employment only if [s]he can show 'a legitimate claim of entitlement' to h[er] job under state or local law." *Luy v. Baltimore Police Dep't*, 326 F. Supp. 2d 682, 689 (D. Md. 2004) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577-78 (1972)). "A public employee in an at-will position does not . . . have a protected property interest in continued public employment, absent rules and understandings entitling h[er] to termination 'for cause.'" *Alexander v. City of Greensboro*, 762 F.2d 754, 807 (M.D.N.C. 2011)(quoting *Andrew v. Clark*, 561 F.3d 261, 269-70 (4th Cir. 2009)).

Miller has alleged that her employment was not at-will, and she could be terminated only after "a hearing where the Defendants were to establish the factual basis" for the termination. Compl. ¶ 17.[4] She has also alleged that the February 18, 2009 letter stated that her suspension was "pending a pre-termination hearing," and on March 3, 2009, Jones told her that she could not be considered for termination because she had

---

[4] Miller did not attach a copy of her employment contract to the complaint, and the Defendants have not attached a copy to their motions.

only "deviated from . . . certain procedures." *Id.* ¶¶ 12-15. Miller argues that these allegations show that she could be terminated only for cause and after a hearing. Pl.'s Opp'n 7.

"A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support h[er] claim of entitlement to the benefit." *Perry v. Snidermann,* 408 U.S. 593, 601 (1972). Miller's allegations that her employment was not at-will, and Board officials told her that the termination decision would be made after a hearing, are sufficient at this stage of the litigation to show such a "mutually explicit understanding" and demonstrate Miller's protected property interest in continued public employment.[5]

2. Deprivation of the Protected Interest

Miller argues that she has shown a denial of her protected interest in continued employment because she was not afforded an opportunity to clear her name, and she was "compelled to retire from her position" when she refused to be demoted. Pl.'s Opp'n 9-10 (*quoting* Compl. ¶ 21).

---

[5] *See Rippeon v. Frederick Cnty. Bd. of Educ.,* 2010 WL 3549484, at *3 (D. Md. Sept. 9, 2010)("While, under Maryland law, employees are presumed to be at-will employees with no property right in continued employment, Maryland courts have recognized an exception to that conclusion where . . . policies provide restrictions on the discharge of an employee.").

"[A]n injury to a person's good name, honor, or reputation is not a deprivation of a cognizable property interest, without additional tangible injury, such as loss of employment." *Alexander*, 762 F. Supp. 2d at 807 (quoting *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 147-48 (4th Cir. 2009)).[6] Thus, Miller's contention that she was denied her protected property interest because she was unable to clear her name fails as a matter of law. *See id.*

Miller has also alleged that she was forced to choose between indefinite suspension without pay or demotion to a lower-paid position. When she refused the demotion, the suspension continued, and she was eventually "compelled" to retire.

Although a public employee "who resigns voluntarily . . . suffer[s] no deprivation at the hands of the state," *Stone v.*

---

[6] If Miller's complaint alleges that she was deprived of a liberty interest without due process because she was not given a hearing to clear her name, that claim fails. To state such a liberty interest claim, an employee must allege that the employer's accusations: "(1) placed a stigma on h[er] reputation; (2) were made public by the employer; (3) were made in conjunction with h[er] termination or demotion; and (4) were false." *Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007). An employee satisfies the second element by alleging facts to show a "likelihood that prospective employers . . . or the public at large will inspect [her personnel] file." *Id.* at 650. Miller has not alleged that prospective employers or the public will likely be given access to her employment records. *See id.* (affirming dismissal of liberty interest claim when employee "alleged only that his file with the charges 'may be available to prospective employers'").

*Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 173 n.7 (4th Cir. 1988), Miller's allegations are sufficient to show that her resignation was not voluntary. The forced choice between the demotion (with loss of pay) and indefinite unpaid suspension is a deprivation of Miller's protected property interest in continued employment.[7]

3. Adequacy of the Procedures

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The inquiry is flexible, and courts balance three factors:

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.

*Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

Generally, before a public employee with a protected interest in continued employment may be terminated, due process requires that she be given (1) notice which is "timely under the

---

[7] *Cf. Fields v. Durham*, 909 F.2d 94, 98 (4th Cir. 1990) (under Maryland law, there is no deprivation of a property interest in continued employment "so long as the employee receives payment of the full compensation due under the contract"); *Miller v. Hamm*, 2011 WL 9185, at *7-8 (D. Md. Jan. 3, 2011)(employee who resigned may show deprivation of protected interest in continued public employment if the totality of the circumstances show that the employer coerced the resignation, and the benefit was surrendered involuntarily).

circumstances" and "describes the nature of the charges and general evidence against [her]," and (2) "an opportunity to present her side of the story." *Bowers v. Rectors & Visitors of the Univ. of Va.*, 478 F. Supp. 2d 874, 889 (W.D. Va. 2007).[8] To satisfy the hearing requirement, the plaintiff "must be given the chance to communicate on her own behalf . . . either in person or in writing, why [the] proposed action should not be taken." *Id.* (quoting *Loudermill*, 470 U.S. at 545).

Miller's complaint alleges sufficient facts to show that she was not given this opportunity. She has alleged that the February 18, 2009 letter promised a pre-termination hearing on February 26, 2009, but that hearing was not held, and on March 3, 2009—without a hearing or opportunity to present her case—she was given six days to decide whether to accept demotion or remain on unpaid suspension. *See* Compl. ¶¶ 14-16. Miller has alleged sufficient facts to show that the Defendants may have violated her procedural due process rights. Her complaint will not be dismissed for failure to state a claim.

---

[8] The Supreme Court has explained that in the public employment context, "the significance of the private interest in retaining employment cannot be gainsaid" and that "some opportunity for the employee to present h[er] side of the case is . . . of obvious value in reaching an accurate [termination] decision." *Cleveland Bd. of Ed. V. Loudermill*, 470 U.S. 532, 543 (1985). Because "affording the employee an opportunity to respond prior to termination" generally does not impose a "significant administrative burden nor intolerable delay[]," the "governmental interest in immediate termination does not outweigh" the other considerations. *Id.* at 544.

C. Seawright's Motion to Dismiss

Seawright also argues that the complaint against him should be dismissed for insufficient service under Rule 12(b)(5). ECF No. 6 at 4-5. He has submitted an affidavit that on November 22, 2010, he "was given an open envelope and learned of this matter" and that he "ha[s] never given authority to anyone, including but not limited to other employees or agents of the Board, to accept service on [his] behalf." Kevin Seawright Aff. ¶¶ 3-4, Dec. 13, 2010

In accordance with the Maryland Rules, Miller sent a copy of the summons and complaint by certified mail. See ECF No. 4. However, the mailing was addressed to "Mr. Kevin Wainwright," not Kevin Seawright. Id. The mailing identified Kevin Wainwright as the special assistant to the Board's chief operating officer, and the complaint properly named Seawright. Id. Seawright admits that he received Miller's mailing and had actual notice of the suit. See Seawright Aff. ¶ 4. He has not argued that maintenance of the suit would be prejudicial. Accordingly, his motion to dismiss for insufficient process will be denied.[9]

---

[9] See Delaney v. Marsh, 2010 WL 1212569, at *2 (W.D. Va. Mar. 25, 2010)(denying motion to dismiss for improper service when plaintiff served defendant using the wrong first name; "Dr. Marsh received a copy of the relevant documents upon personal service at the Jail" and he "does not argue how continuing the action despite the error of naming him Robert instead of John is

13

III. Conclusion

For the reasons stated above, the Defendants' motions to dismiss will be denied.

_____6/27/11_____  
Date

_____[signature]_____  
William D. Quarles, Jr.  
United States District Judge

---

prejudicial "); *O'Meara*, 464 F. Supp. 2d at 476 ("When there is actual notice, failure to strictly comply with Rule 4 may not invalidate the service of process.").