IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

| | |
|---|---|
| BESSIE MILLER, | * |
| Plaintiff, | * |
| v. | CIVIL NO.: WDQ-10-2038 |
| BALTIMORE CITY BOARD OF SCHOOL COMMISSIONERS, et al., | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Bessie Miller sued the Baltimore City Board of School Commissioners (the "Board"), Kevin Seawright, and Jerome Jones (collectively, the "defendants") for violation of due process. Pending is the defendants' motion for summary judgment. For the following reasons, the motion for summary judgment will be granted.

I. Background[1]

From September 4, 1997, until August 2009, Miller worked for the Board; her final assignment was as Cafeteria Manager I at Frederick Douglass High School. ECF No. 39-1 ¶ 2. Jones was Manager of Labor Relations for the Board, for which he conducted

---

[1] In reviewing a motion for summary judgment, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

pre-termination hearings. *Id.* ¶ 3. Seawright's position is unclear.[2]

The duties of Cafeteria Manager I include "receiv[ing] and count[ing] money, and prepar[ing] deposits." ECF No. 36-1. According to the standard operating procedures for money handling:

1. The manager and the designated employee both count the deposit each day.
2. The money is counted and is recorded on the bank deposit slip and signed by the Manager and designated employee to verify the deposit amount. If only one employee is at the school, that person will count the deposit twice and sign the deposit slip twice.

ECF No. 36-4.

Cynthia Thomas assisted Miller with her money handling duties. ECF No. 39-1 ¶ 3. When Thomas was absent, Miller designated another person to help her. *Id.* When Miller was absent, Thomas "handled the bank deposits obviously without [Miller]."[3] *Id.* After a review of deposit processes, the Board became aware of discrepancies in the school's deposits. ECF No. 36-8 at 4. A variance report was prepared indicating that from

---

[2] Miler alleged that Seawright was "Special Assistant to the Chief Operating Officer" of the Board. ECF No. 1 ¶ 5. Seawright denied this allegation. ECF No. 18 ¶ 5. The Court has not found any evidence of Seawright's actual position in the record.

[3] It is unclear whether Thomas had assistance in processing the deposits on these days.

2

September 12, 2008, to February 10, 2009 $999.95 was missing. ECF No. 36-2.

Under Article 22 of the Agreement between AFSCME AFL-CIO Local 44 and the Board, "[d]isciplinary action may be imposed upon an employee only for just cause." ECF No. 36-9 at 11. If discipline is based on violation of criminal or civil statutes, the Board was required to "give notice when appropriate to the employee(s) that an investigation is ongoing" and "impose a disciplinary action no later than . . . 30 days after its investigation is completed." *Id*.

Article 22 provides specific procedures for discharge, demotion, and suspension:

> 1. In the event of a discharge, reduction in pay or position or suspension for more than . . . 30 days, the appointing officer shall schedule, if requested, an informal conference with the affected employee and [her] Union representative within five . . . calendars days from the date of the notice of such action.
>
> 2. In the event an employee . . . is discharged, reduced or suspended for more than . . . 30 days, such employee and/or [her] Union representative may request an investigation by the [Board]. The [Board] shall, as part of its investigation, refer such request to its Hearing Officer. The Hearing Officer shall conduct a fair and impartial hearing no later than . . . 15 days from the receipt of such request.
>
> The Hearing Officer, at the conclusion of such hearing[,] shall make findings of fact and recommendations which shall be forwarded to the [Board] for its determination, within . . . 15 days after the hearing. The [Board] shall take action on such recommendation within . . . 15 days thereafter. Copies of the Hearing Officer's findings and

recommendation shall be sent to the aggrieved employee, the Union representative and the Department head. . . .

ECF No. 36-9 at 11-12.[4]

On February 13, 2009, Miller met with Board and union representatives. The parties dispute what happened at this meeting.

Miller declared that she and Thomas were called to a meeting at the Board's administrative offices. ECF No. 39-1 ¶ 6. Miller did not know what the meeting was going to be about. *Id.* ¶ 8. Thomas entered the meeting room first and stayed approximately 45 minutes; Miller remained outside. *Id.* ¶ 6. After Thomas left, Miller entered. *Id.*

Inside the room, Miller met with Seawright; Ingrid Brailsford, a Board official; Tony Geraci, Food and Nutrition Director for the Board; Patrice Johnson, Miller's union representative; Jacinta Hughes, a Board accounting official; and Lydie McCargo-Redd, another Board official. *Id.* Seawright stated that the Board "had been watching [her] administration of the cafeteria funds since 2008, and they knew that [Miller] had taken money from the bank deposits." Seawright indicated that he wished to fire Miller immediately; if she resigned, "there would be no further action taken, and there would be no mark on

---

[4] Additionally, if an employee demands an investigation, the hearing is conducted by a member of the National Academy of Arbitrators, a list of whom was maintained by the Board and Union. ECF No. 36-9 at 11-12.

4

[her] record." *Id.* ¶ 7. Miller then met alone with Johnson, who accused Miller of taking the funds. *Id.*

After rejoining the others, Miller told Seawright that "as [she] had taken no money, [she] was not resigning." *Id.* ¶ 8. Geraci indicated that there would be an investigation. *Id.* Miller claims that no one mentioned that this meeting was a hearing, she was not provided documentation--including the standard operating procedures she was alleged to have violated-- and she was not given an opportunity to defend herself "other than to offer a general denial." *Id.* ¶¶ 8, 17.

By contrast, Jones affirmed that Geraci "shared the allegations of mishandling of Board funds" and documents "including[] Food Services deposit tickets, Garda ticket receipts, statements of deposit issued by Bank of America, and the Standard Operating Procedures regarding daily bank tracking" with Miller at the meeting. ECF No. 36-3 ¶¶ 8-9.

After the meeting, Miller worked February 16 and 17, 2009 without incident. ECF No. 39-1 ¶ 8. On February 17, 2009, Geraci wrote Jones and indicated that on February 13, 2009, Miller "attended a hearing with the Food and Nutrition Department" and her union representative. ECF No. 36-5 at 1. He also stated that "[t]he review of financial records and the meeting on February 13, 2009, revealed that the Standard Operating Procedures issued by BCPS/Food and Nutrition Services

were not followed." *Id.* He recommended that Miller be dismissed. *Id.* That day, Geraci also wrote Miller, stated the same conclusion from the records and meeting, and told her that she was "suspended without pay effective February 19, 2009 pending a pre-term hearing." *Id.* at 2. On February 18, 2009 Miller's supervisor delivered Geraci's letter. ECF No. 39-1 ¶ 9.

On February 18, 2009, Jones wrote to Miller noting that she had attended a hearing on February 13, 2009, and had been suspended pending a hearing. ECF No. 36-6. He informed her that a hearing was scheduled for February 26, 2009, and her failure to attend would "result in proceeding with charges to terminate [her] employment." *Id.*

On February 26, 2009,[5] the hearing was held. ECF No. 36-3 ¶ 11. According to Jones, Miller "was apprised of the substance of the allegations that she mishandled Board funds" and "admitted that she allowed her subordinate to count funds and prepare deposits without oversight in violation of the standard operating procedures." *Id.*

Miller declared that Jones "offered no specific assertion of what he contended [she] either had failed to do or to have done incorrectly" under the standard operating procedure, to

---

[5] Miller cannot remember whether this meeting occurred on February 26, 2009, but she does remember a meeting after February 13, 2009. ECF No. 39-1 ¶ 16.

6

which no one referred. ECF No. 39-1 ¶ 19. Miller contended that she "conducted [her] responsibilities with respect to the handling of the funds in accordance with the procedures in place." *Id.* No "findings or outcome [were] communicated to [Miller]," and she was not provided "any opportunity . . . to offer any explanation on [her] behalf." *Id.* ¶ 20.

On March 2, 2009, a union official told Miller that she needed to meet with Jones the next day. *Id.* ¶ 20. Jones affirmed that Miller "was given the option of accepting a demotion to the position of Food Service Worker I or being terminated." ECF No. 36-3 ¶ 12. Miller was given time to consider her options. *Id.* ¶ 13. Jones affirmed that he never "proferr[ed] a belief as to whether or not she actually removed funds from Food Service deposits." *Id.* ¶ 14.

Miller declared that Jones twice stated that "he 'without doubt' knew or believed that [she] had not taken funds from the deposits." ECF No. 39-1 ¶ 21. Nevertheless, he insisted on demotion because she "had deviated from certain unspecified procedures in handling the funds." *Id.*

On March 9, 2009,[6] Miller's counsel John H. Morris, Jr., Esquire, wrote to Frank C. Derr, Esquire, associate counsel for the Board, discussed Miller's positions, and requested further

---

[6] The letter is misdated March 9, 2008, but there is no dispute that it was sent in 2009. *See* ECF Nos. 36 at 5 n.7, 39-2 ¶ 3.

7

discussion between the parties. ECF No. 36-7. Jones received a copy of the letter from Derr, assumed that counsel were discussing the matter, and took no disciplinary action. ECF No. 36-3 ¶¶ 15-16. Morris received no substantive response to the letter. *See* ECF No. 39-2 ¶ 4.

Jones affirms that Miller never requested "an informal conference or an investigation as prescribed by the Agreement between Local 44 and the [Board]." ECF No. 36-3 ¶ 17. On April 17, 2009, Miller "began the retirement process," and, accordingly, "no disciplinary action was taken." *Id.* ¶ 18.

Miller believes that she "inquired about retirement after the end of the school year, and the paper work was dated back to an earlier date." ECF No. 39-1 ¶ 28. She affirms that she would not have retired absent "the wrongful allegations of Defendants and their denial of process relating to their false allegations against [her]." *Id.* ¶ 29. Because he had received no response to his March 9, 2009 letter, on September 12, 2009, Morris wrote to Seawright seeking to resolve the matter. ECF No. 39-2 at 4-5. It is unclear whether there was a response.

On July 27, 2010, Miller filed suit against the defendants for violation of due process. ECF No. 1. On October 22, 2012, the defendants moved for summary judgment. ECF No. 35. On November 28, 2012, Miller opposed the motion, ECF No. 39, and on December 18, 2012, the defendants replied, ECF No. 40.

II. Analysis

   A. Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[7] In considering the motion, the judge's function is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [her] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

---

[7] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

B. The Defendants' Motion

The defendants seek summary judgment on the single count in the complaint. ECF No. 35. Miller asserts that there is a genuine dispute of material fact precluding judgment for the defendants. ECF No. 39. The defendants reply that although some facts are in dispute, they are not material. ECF No. 40.

To establish a Fourteenth Amendment procedural due process claim, Miller must show that: (1) she had a protected property or liberty interest, (2) she was deprived of that interest by state action, and (3) the deprivation occurred without constitutionally adequate procedures. *See Sunrise Corp. v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005). The Board has not challenged Miller's property interest in her employment. ECF No. 36 at 8.

The Board asserts that Miller cannot show deprivation because she voluntarily resigned. ECF No. 36 at 9. Miller asserts that she was forced to retire because of the suspension without pay. ECF No. 39 at 10.

A "public employee who resigns voluntarily . . . . has suffered no deprivation at the hands of the state." *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 173 n.7 (4th Cir. 1988). If an employee asserts that she resigned under duress,[8]

---

[8] Resignation may be found to be involuntary if an employer made a misrepresentation of material fact that induced the employee's

10

"a resignation may be found involuntary if on the totality of circumstances it appears that the employer's conduct . . . effectively deprived the employee of free choice in the matter." *Id.* at 174. Factors include: "(1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice [she] was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether [she] was permitted to select the effective date of resignation." *Id.* The analysis is objective; "that the employee may perceive [her] only option to be resignation . . . is irrelevant." *Id.* A choice "between comparably unpleasant alternatives" is insufficient, even if the alternative is "facing possible termination for cause." *Id.*

Miller asserts that there are genuine disputes of material fact precluding judgment. See ECF No. 39 at 9. Although there are disputed facts, they are not material to the analysis because under any construction, the defendants are entitled to judgment. See *Anderson* 477 U.S. at 249.

Although how the deadline was decided is apparently disputed, Miller was granted at least until March 9, 2009 to decide whether to be demoted to Food Service Worker I or face termination. See ECF Nos. 36-3 ¶¶ 12-13, 39-1 ¶ 21. Morris's

---

reliance. *Stone*, 855 F.2d at 174. There are no facts indicating such here.

March 9, 2009 letter apparently indefinitely postponed any decision by Jones. See ECF No. 36-3 ¶ 15-16. From this status, Miller chose *neither* option--demotion or termination--presented by the Board. Rather at some point, either on April 17, 2009 or after the school year had concluded, Miller selected a third option—retirement--without any input from the defendants. See *id.* ¶ 18; ECF No. 39-1 ¶ 28.

Under *Stone*, although some portions of these facts are disputed, Miller's decision to retire was voluntary. Miller was given two options by the Board, one of which permitted her to keep working, albeit at a lower position. Miller chose retirement on her own and on her schedule, given Jones's inaction. See ECF No. 36-3 ¶ 15-16. These indicate she had a reasonable time in which to reach her decision. See *Stone*, 855 F.2d at 174. Further, viewed in the light most favorable to Miller, the facts indicate that she understood the options presented by the defendants when she chose the unoffered course of retirement. See ECF No. 39-1 ¶ 28 (Miller's declaration that she retired because she needed money).

Under *Stone*, Miller's retirement--on her initiative and at a time of her choosing--was voluntary. See *Stone*, 855 F.2d at 174. Although Miller believed that she needed to retire to maintain her income, see ECF No. 39-1 ¶ 28, she made the choice between the "comparably unpleasant alternatives" of suspension

12

or demotion. *See Stone*, 855 F.2d 174. As Miller's retirement was voluntary, she was not deprived of a property interest.[9] *See id.* Accordingly, the defendants are entitled to summary judgment.

III. Conclusion

For the reasons stated above, the defendants' motion for summary judgment will be granted.

_____6/27/17_____    _____/s/_____
Date                   William D. Quarles, Jr.
                       United States District Judge

---

[9] As Miller has not met this element, the Court need not address the defendants' contention that she received adequate process. *See* ECF No. 36 at 8-9.